**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
**John Joseph Moakley U.S. Courthouse**



**Appeals from interlocutory orders that denied Plaintiff's November 1, 2022 motion to reconsider; January 30, 2023 motion under Rules 60(b)(1) and 60(b)(6); and January 31, 2023 motion under Rule 60(b)(6).**

Issued on December 29, 2022, February 1, 2023, and February 2, 2023.
In the case 3:19-cv-30056-MGM filed on April 22, 2019 at the
Springfield (Western) Divisional Office of the
United States District Court for the
District of Massachusetts.

**USCA Cases Nos. 23-1119, 23-1142, and 23-1143**

**Jane Doe,**
*Plaintiff-Appellant*,

**v.**

**UMass-Amherst and twelve other defendants,**
*Defendants-Appellees*.

**Dated July 3, 2023**

**EMERGENCY MOTION FOR A THIRD TIME EXTENSION**
**TO FILE BRIEF**

On April 21, 2023, Appellant mailed to this Court a motion (dated April 21, 2023) to extend her brief's filing due date from April 26, 2023 to October 26, 2023.

On April 27, 2023, the Court partly allowed this request enlarging the April 26, 2023 deadline with 6 weeks and 2 days, i.e., until June 9, 2023 included. Subsequently,

on June 5, 2023,[1] Appellant moved the Court for the grant of a supplemental time

extension from June 9, 2023 until September 8, 2023. Three days later, on June 8,

2023, as for her first motion for enlargement, that second time extension request was

partly granted, notably by enlarging the June 9, 2023 deadline to July 10, 2023

included, which gave to Appellant an additional 4 weeks and 3 days to submit the

expected brief and which, added to the first extension, amounted to a total of ten

weeks and 5 days more vs. the initial April 26, 2023 briefing deadline. Remarkably,

unlike its April 27, 2023 order on Appellant's first motion to extend brief's due date,

in its June 8, 2023 order the Court added: "We are disinclined to grant a request for

further enlargement of this deadline."

Appellant, truly profoundly grateful for the second opportunity given to her

to achieve her brief properly—albeit the additional extra time granted was shorter

than that she had reasonably assessed as necessary—continued the brief she had

started but could not finish for the date of June 9, 2023, while praying that no new

major legal task (in connection with the other two proceedings[2] litigated in parallel

---

[1] Appellant first requested this second additional time in a motion dated June 2, 2023 and mailed on that same day. However, due to an error in this June 2, 2023 motion, on June 5, 2023, Appellant mailed another motion dated June 5, 2023 to substitute an attached corrected version dated June 5, 2023 for the June 2, 2023 motion.

[2] Appellant refers to her complaint at the U.S. District Court from which her appeals at this Court stem, and to a state appeal case to which she has already alluded in her affidavit dated March 29, 2023, filed in support of her motion to receive temporarily court-issued documents and orders via email also dated March 29, 2023 and mailed to this Court on that same date. (See ¶ 5 on page 1 of this March 29, 2023 affidavit: "My supplications for decisions on those motions have remained vain even though I could settle a state appeal (against my disqualification from receiving unemployment assistance benefits) being prosecuted in parallel, if the federal district court ruled that some of my claims against UMass-Amherst could proceed.")

with her appeals at this Court) would arise during these extra 4 weeks and 3 days, so that she could complete her brief in time.

Unfortunately, about ten days after the initially extended deadline,[3] a very important decision was issued in the state appellate proceeding that Appellant had formerly managed to stay until the motions to dismiss her complaint at the U.S. District Court would be ruled upon. (Noticeably, this stay was lifted in January 2022 because the U.S. District Court did not show any intent to decide those motions in a timely fashion.[4] **In the latter regard, over 21 months have already elapsed since those motions were filed but the latter are still pending to date.**[5]) Because the time to seek further appellate review, a procedure that is besides totally new to Appellant, cannot be enlarged,[6] Appellant thus had no choice: *unwillingly*, she had to bring to a halt her efforts toward completing the brief expected in this case. Furthermore, about a week later, the defendants in her U.S. District Court's complaint filed three oppositions to her latest motion (for leave to file a fourth

---

[3] Appellant did not give the precise date to preserve her anonymity.

[4] *See* the redacted letter dated February 14, 2022 (**Attachment #01**) in which Appellant attempted to convince the U.S. District Court to decide those motions to dismiss in the slightest delay, while explaining that she had been "tasked by the Mass. Appeals Court with taking 'steps […] to obtain a decision on the pending motions,'" to try to continue this stay. *See also* as **Attachment #02**, Appellant's emergency motion to the U.S. District Court dated March 22, 2022 in which Appellant "implore[d] th[at] Court to answer with the utmost urgency the question of whether it intends to rule on the defendants' four motions (Dkt. Nos. 101, 176, 178, and 208), which to date have been fully briefed, as the viability of Plaintiff's grounds to continue fighting for a stay initially allowed 'until results of on-going federal litigation are issued' critically rel[ied] on the nature of th[at] response." (**That emergency motion was ruled upon only over a year later, i.e., on March 28, 2023, besides via an order that astonishingly <u>did not</u> indicate whether the U.S. District Court intended to decide the two motions to dismiss at issue.**)

[5] *See* ¶ 4 on page 1 of Appellant's March 29, 2023 affidavit referenced in n.2 *supra*: "there currently are in this case two defendants' motions to dismiss that have been pending since September 27, 2021."

[6] Appellant also seeks to move for reconsideration besides filing an application for further appellate review.

amended complaint),[7] thereby obliging Appellant to seek leave to file a reply. The preparation of that motion and her proposed reply (not to mention this motion) in turn delayed Appellant's writing of her motion to reconsider (*see supra* n.5) as well as her search for the rules to draft an application for further appellate review, which had already obliged Appellant to stop working on the brief at issue.

As of the mailing date to this Court of this motion, Appellant still has to finish that proposed reply, the aforementioned motion to reconsider and application for further appellate review, as well as the brief due in this case on July 10, 2023. Appellant does not know whether anyone, even with the most favorable conditions, would be able to produce *alone* so many documents of such a high level of difficulty and related to three different types of proceedings, at the same time. However, Appellant clearly knows what is attainable in circumstances where one has no legal training, receives absolutely no legal help, and where their already extremely dire conditions[8] have become even worse owing to the summer break. (Indeed, due to the summer, campus buses and libraries have reduced their operating schedules,

---

[7] At page 4 of her June 5, 2023 motion for supplemental time extension to file brief, Appellant mentioned "the new amendment for which she was only recently, on May 31, 2023, able to initiate the first step of the procedure to seek to add new parties."

[8] In her March 29, 2023 affidavit referenced in n.2 *supra*, Appellant tackled some of those dire circumstances, such as her severe economic hardship, in ¶ 2 on page 1: "I am a foreigner and English is only my fourth language. I have been indigent for years on end because of becoming a whistleblower regarding abuses at my workplace[;]" but also in ¶ 6 on page 1: "I became indigent because of having been several times unlawfully deprived (as a retaliation) of the right to continue my program and therefore work in the U.S., which occurred in 2015. When I commenced the aforesaid federal civil action on April 22, 2019, I had already depleted nearly all the resources I possessed. Then, the COVID-19-related lockdowns and other restrictions seriously aggravated my situation, thrusting me into dire straits."

causing to Appellant a *significant* reduction of the number of hours during which she could previously access a computer, internet, the databases Westlaw and Lexis-Nexis, as well as the professional software Adobe Acrobat DC. None of these tools, indispensable to accomplish decent legal documents, are in Appellant's possession and/or easily accessible to Appellant, who is also strictly dependent on public transit to try to address her transportation needs in an acceptable manner.)

The recent pandemic brought to the public eye the concept of *cognitive load*, i.e., the amount of extra mental energy required for everyday life. Indeed, during times of disruption, usually routine tasks require an abnormal amount of decision-making—that is, in other terms, normal life adds up to an overwhelming amount of work for the mind. Since Appellant's circumstances (i.e., her immigration status, her whistleblower status, her indigent status, and her ongoing litigations besides pursued pro se) are far from being akin to the expected average normal life, it is undeniable that Appellant has been under a heightened cognitive load for years. Against this backdrop, a considerable change like an intensified legal *writing and printing* workload combined with schedule reductions for campus buses and libraries will assuredly disruptively impact an already inconsistent access to the resources necessary to ensure her self-representation, while thrusting Appellant in an untenable precarious situation where her ability to meet court deadlines is

threatened. Yet Appellant's legal cases are no less than a matter of survival because only thanks to these proceedings can Appellant attempt to regain her life. [9]

Those are unfortunately the exact same circumstances now being faced by Appellant, through no fault of her own: It is thus not humanly possible for her to create simultaneously all the complex and vital legal documents mentioned above. As a result, Appellant now resorts to asking for this Court's leniency toward her wish to prepare a pertinent (i.e., supported by relevant legal citations) brief that is also adequately (i.e., in accordance with this Court's specific set of rules) conceived.

Wherefore, Appellant asks this Court to extend her brief's filing due date from July 10, 2023 to July 31, 2023, which would provide her with three weeks more vs. the ten weeks and 5 days already granted. This request's only purpose consists in making it feasible for Appellant to file a *proper* brief, considering her unexpected current heavy legal workload, the temporary but consequential decline of her already extremely limited and diminishing resources, as well as the fact that she cannot serve this Court with legal documents electronically. Indeed, Appellant has *absolutely* no dilatory motive, and besides none of the Appellees would be prejudiced.

Respectfully submitted,
/s/ Jane Doe

---

[9] Appellant does not elaborate the distress (such as the great mental and physical toll endured on a daily basis) both caused and exacerbated by her precarity, her substantially-increased cognitive load, as well as her unreliable and dwindling access to resources. Also, although Appellant cannot afford a medical consultation or legal counsel, this type of hardship does not belong only to those who can pay to have it certified and raise awareness about it.

## Certificate of Service

On July 3, 2023, Appellant hereby certifies that on the same day she served the instant motion and its two attachments by mailing printed copies of all these documents via U.S.P.S. regular mail to the Clerk's office of the U.S. Court of Appeals located at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210. Subsequently, Appellant emailed copies of the corresponding digital files to the opposing parties' counsels, namely, Atty. Mark Johnson, Assistant Attorney General Hannah Vail, and Atty. Deborah Ecker.

Respectfully submitted,
/s/ Jane Doe

Encl.: As Attachment #01, Appellant's redacted version (filed on February 24, 2022) of her letter to the Honorable Mark G. Mastroianni dated February 14, 2022; and as Attachment #02, Appellant's (dated March 22, 2022 and filed on that same day) unassented-to emergency motion for a clear answer to the crucial question of whether the Court intends to rule on the Defendants' four pending motions.

# ATTACHMENT #01

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### Civil Action No. 3:19-30056-MGM

**Jane Doe, an individual,**
**Plaintiff,**

**v.**

**UMass-Amherst, a public institution,**
**Dr. Derek Lovley, an individual,**
**Dr. Toshiyuki Ueki, an individual,**
**Dr. John Lopes, an individual,**
**Joy Ward, an individual,**
**Dr. Kumble Subbaswamy, an individual,**
**Sergeant Jonathan Hall, an individual,**
**Atty. Randall Smith, an individual,**
**Chief Scott Livingstone, an individual,**
**Karlee Drumgool, an individual,**
**Dr. Cynthia Gerstl-Pepin, an individual,**
**Sean Regan, an individual,**
**Chief Tyrone Parham, an individual,**
**Defendants.**

### Dated February 14, 2022

## PROPOSED SEALED UNREDACTED LETTER TO
## THE HONORABLE MARK G. MASTROIANNI

Plaintiff submits the present letter in the hopes that it will be read not just by some of the

Court's Clerks but also by the Honorable Mark G. Mastroianni. This letter is motivated by the

following order issued on ███████████ in the Massachusetts Appeals Court case ███████:

"████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████."[1]

---

[1] Via ███████, Plaintiff seeks to appeal from two decisions of the ██████████████ where
Plaintiff has been attempting to file late a complaint for judicial review of the Mass. Department of Unemployment
Assistance's decision to intercept her tax refund. *See* https://www.ma-appellatecourts.org/docket/███████.

And this letter has the purpose to apprise the Honorable Mark G. Mastroianni of the pressure that Plaintiff is currently under.

Plaintiff has indeed drawn from the aforesaid order that to continue the stay in the case ███████ she is now being tasked by the Mass. Appeals Court with taking "steps […] to obtain a decision on the pending motions[]" in the hereinbefore-captioned civil lawsuit in which to date (as was the case on ██████████) three defendants' motions remain undisposed of (Dkt. Nos. 101, 176, and 178).[2] Plaintiff's ██████████ move for a modification of several aspects of the ██████████ order (██████████ docket report) partially failed as the revised order, issued on ██████████ in response to her ██████████ motion, states:

"███████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████."'"

It is pertinent to emphasize that, in her ██████████ motion for a modification, Plaintiff argued at 2-3 that "… since the three motions, which are preventing Appellant's federal proceeding from progressing, were submitted by the defendants, Appellant believes that it is improper to ask her to undertake actions 'to obtain a decision on the[se] pending motions.' Besides, the filers of these motions are representatives of the Commonwealth such as this court's and the DUA's employees, which renders unfathomable that this court did not simply contact the former to demand that they compel the issuance of decisions on their own motions. Reasonably, such a move would certainly have more weight and so would be much more efficient than any of the

---

[2] Two of these motions (Dkt. Nos. 101 and 176) were filed by the University Defendants and the other (Dkt. No. 178) by Defendant Atty. Randall Smith. Chief Scott Livingstone, a non-answering defendant in the *sub judice* action, was recently defaulted (Dkt. No. 205) and is not concerned by these three defendants' pending motions.

unidentified 'steps,' which this court envisions Appellant could leverage. Further, quite honestly, Appellant—a pro se litigant—has been unable to figure out which step(s) this court has in mind. Indeed, notwithstanding the fact that awaiting these decisions is excruciatingly painful for Appellant, pressuring the federal court into hastening the issuance of rulings critical to clear the way for a trial is not to her advantage because a thorough analysis of all pleadings ought to be performed in the interests of fairness. The relevance of this consideration is particularly high given that 1) not much time has lapsed since the defendants' renewed motions to dismiss were fully briefed (████████████████████████████ docket report]); 2) the defendants requested a hearing on none of their own motions; and 3) at 1:00 pm on December 30, 2021, Appellant was informed by a docket clerk that the federal court is backlogged owing to the covid-19-induced global crisis." However, the ████████████ revised order did not address this part of Plaintiff's argument and therefore coerced Plaintiff into submitting the instant letter as one[3] of the undefined "steps" to which this revised order refers (*see supra*).

In addition, the pressure exerted on Plaintiff "to obtain a decision on the [defendants' three] pending motions" was increased when, subsequently to the issuance of that ████████████ revised order, a similar order was applied ████████ later (i.e., on ████████████████) to the Mass. Appeals Court case ████████████,[4] as follows:

"████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[3] The first step undertaken by Plaintiff has consisted in seeking Defendant Chief Scott Livingstone's default. In this regard, Plaintiff extends her apologies to the Court as she erroneously moved to obtain a default order, but in fact she was truly only seeking—what she learned via the Court's February 9, 2022 order (Dkt. No. 202) is—a default notice, which besides she solely needed to request from the Clerk of Court.

[4] <u>At this juncture</u>, the case ████████ corresponds to an appeal from the ████'s affirmance of Plaintiff's *retroactive* disqualification by the Mass. Department of Unemployment Assistance ("DUA") for receiving Unemployment Insurance benefits. *See* https://www.ma-appellatecourts.org/docket/████████.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████.'"

As a reminder, ████████ is a case which similarly to ████████ is currently stayed and which should be paired with the latter; and both ████████ and ████████ commenced at a time when covid-19-related restrictions had recently been implemented in Massachusetts. Then on ████████████, Plaintiff's sustained efforts at staying these two proceedings "until results of on-going federal litigation are issued" finally succeeded. And since then, Plaintiff has been filing in these two Appeals Court cases status reports[5] documenting the progress of her federal lawsuit (*see* respective docket reports publicly accessible at the web addresses furnished at n.1 and n.4). These two cases touch on, for ████████, Plaintiff's *retroactive* disqualification by the Mass. Department of Unemployment Assistance ("DUA") from receipt of Unemployment Insurance benefits but also—if the lower court accepted to submit the adequate paperwork, at last—two other issues;[6] and for ████████, the denial by the ██████████████████████ of Plaintiff's motion for exceptional relief with respect to the ████'s denial of her motion to file late her complaint for judicial review of the DUA's intercept of her tax refund plus the ████'s denial of her motion to proceed under a pseudonym. Although the DUA has not acknowledged that the lower court has indeed refused to submit the paperwork required to enable Plaintiff to consolidate the case ████████ with two supplemental issues, Plaintiff reaffirms here that this is entirely true. In fact, a former ████'s employee who was not a clerk, Carol Matthias, on March 31, 2020 mailed back to Plaintiff her appeal notices respecting these other two issues. And when another NDC's

---

[5] In these status reports, Plaintiff has carefully abstained from giving any details that could put into jeopardy the protections bestowed on her thanks to her federal litigation proceeding pseudonymously.

[6] These two other issues are the ████'s denial of Plaintiff's motion to impound certain documents in accordance with the law and the ████'s denial of Plaintiff's motion to proceed under a pseudonym. The lower court has to date refused to assemble the respective records and forward Plaintiff's appeal notices to the Mass Appeals Court, which has averted Plaintiff's efforts to keep out of the public's view the DUA records that ought to be impounded pursuant to the law and to consolidate her appeal from the DUA *retroactive* disqualification with these other two issues.

employee whose name Plaintiff does not know, <u>at about 1:00 pm on July 20, 2021</u>, all of the sudden approached Plaintiff to tell her "Carol retired because of you,"[7] Plaintiff obtained the confirmation that Ms. Matthias had done this in response to the call Plaintiff had made <u>at about 11:00 am on March 31, 2020</u> to tell Ms. Matthias to email her from now on any court documents instead of mailing them at the address that was on record for Plaintiff because Plaintiff could no longer access her mail due to the covid-19-induced lockdowns. However, Ms. Matthias used this information to return to Plaintiff her last two appeal notices following that call as the date stamped on this mail's envelope, i.e., March 31, 2020, strongly supports. And Plaintiff believes that this wrongdoing is the true reason why the proceedings of the cases ▇▇▇▇▇ and ▇▇▇▇▇ were finally stayed, and that it was because of these wrongs done to her by Ms. Matthias that Ms. Matthias was forced to retire (and not because of Plaintiff).[8] Plaintiff directs the court to the docket report of the Mass. Appeals Court case 2017-P-398[9] while urging that it pay attention to the mention "THIS CASE CONTAINS IMPOUNDED MATERIAL OR PID," which does not appear on the docket report of Plaintiff's case ▇▇▇▇▇ whereas the issue the latter seeks to appeal from is similar to that in 2017-P-398, i.e., a DUA disqualification.

   The above <u>tells the truth and only the truth</u>, which will be acknowledged neither by the DUA (who did not answer to these facts in its ▇▇▇▇▇ response requested by the Mass. Appeals Court; ▇▇▇▇▇▇▇▇▇▇▇▇▇ docket reports) nor by the ▇▇

---

[7] Plaintiff would like to convey here that this statement from a Mass. Trial Court Department's employee whose name she does not even know has gravely concerned her. Further, given the very hostile behavior consistently exhibited toward her by both Ms. Matthias and one of her colleagues (a person named "Jennifer"), that statement corroborated what Plaintiff could already assume, i.e., that she was not welcome at the ▇▇. Finally, Plaintiff has started to be scared for her safety at this state district court (where she must go to access the ▇▇▇▇▇▇▇▇▇) because Plaintiff has done no wrong to Ms. Matthias but the reverse is being alleged there.

[8] Once again, it is Ms. Matthias who has wronged Plaintiff whereas Plaintiff has never harmed Ms. Matthias in any way, shape or form.

[9] *See* https://www.ma-appellatecourts.org/docket/2017-P-0398.

(who went as far as retroactively changing the court docket to make it appear as if Ms. Matthias had returned Plaintiff's appeal notices on ████████████ whereas the date stamped on the envelope of Ms. Matthias' mail[10] proves that she had in reality mailed it on March 31, 2020). Plaintiff uses this fact as a transition to explain why even though it seems to her improper (*see supra* the excerpt from her ████████████ motion to modify) to put in motion actions to try to obtain decisions on the defendant's motions, she is obliged to do so.

The main reason is that, assuming that the federal court's rulings on the defendants' motions should be favorable to Plaintiff, if the stay on both ████████████ and ████████████ were to be lifted before the issuance of these decisions, Plaintiff has zero chance to prevail in these appeals, not because her appeals are unmeritorious, quite the opposite, but because, based on prior experience with the cases ████████████[11] and ████████████,[12] Plaintiff can state without ambages that the Commonwealth's agencies will keep denying any accountability.

Plaintiff quickly reminds this court of her allegation that three state appellate judges lied in their ████████████ decision (████████████████████ docket reports). The cases ████████████ and ████████████ involved wrongful decisions of a former Mass. Department of Labor Relations employee—Atty. Brian Harrington—issued in favor of UMass-Amherst and in exchange for which Atty. Harrington was hired by UMass-Amherst. Plaintiff has explained lengthily, as substantiated by the state records, how the DLR's Chief Counsel, Atty. Jillian Bertrand, lied during the oral argument held on these two cases on ████████████, notably via her ████████████ letter to correct factual misstatements made by Atty. Bertrand during oral

---

[10] On ████████████, Plaintiff retrieved by chance this mail from inside a postal mail tote (without lid and in corrugated plastic), which had been placed in Dr. Ernest Washington's office during the time when UMass-Amherst College of Education was locked to the public from March 24, 2020 until August 9, 2021 excluded.

[11] *See* https://www.ma-appellatecourts.org/docket████████████.

[12] *See* https://www.ma-appellatecourts.org/docket████████████.

argument (███████████████████████████████████████ docket report);

as well as how the three appellate judges who heard the ████████ oral argument lied (by

omission) in their ████████████ decision notably via her ████████████ motion to stay

proceedings "until results of federal litigation of exact same claims are issued" (████████████

████████████ [13]). As a result of the untruthful ████████████ decision, Plaintiff was made

completely unemployable. Yet to this Court, Plaintiff has submitted that one of Atty. Bertrand's

pivotal ████████████ oral statements willfully omitted in this decision, i.e., "it wouldn't be

appropriate for the DLR or the CERB to make that kind of interpretation" (in reference to the

federal regulations at the heart of the case ████████████), should be construed as a waiver by the

Commonwealth of its sovereign immunity and that therefrom "state courts should [have] give[n]

deference to a federal entity's authority to determine"[14] the issues appealed in ████████████. The

latter case was paired, against Plaintiff's will, with ████████████—a case in which the state appellate

justices did not give any credit to Plaintiff's argument that her former union (UAW) was corrupt,

despite the fact that Plaintiff brought to these judges' attention that the results of a long FBI

investigation had just begun to unfold ████████████ before the ████████████ oral argument when

Gary Jones pleaded guilty to embezzlement, racketeering, and tax evasion ██ ████████████. Indeed,

Plaintiff reasserted in her ████████████ reply brief (████████████████████████ docket report)

that her union's "priority interest did not lie in protecting postdoctoral researchers' rights but in

reserving its fund to organizing a holiday party ('the JC's decision was motivated by an ill purpose

(i.e. [sic] preserve the Union's resources for its holiday party)' at RAI/112). In this latter regard,

in March 2020, the UAW union's former president, Gary Jones, was charged by the FBI with

embezzling union funds/members' dues (to perks like lavish meals, cigars, luxury villas, etc.) and

---

[13] *See* https://www.ma-appellatecourts.org/docket████████████.
[14] Quoting ████████████████ docket report.

with other crimes. Further, in June 2020, Mr. Jones pleaded guilty to the FBI charges and agreed to cooperate with the federal prosecutors who have been investigating a broad pattern of corruption at the UAW union for five years." But the ███████████ decision does not allude to these crucial facts either. If three state appellate judges were capable of violating the rule of law as they did vis-à-vis the cases ██████████ and ███████████, then the same can be reasonably expected concerning the cases ██████████ and ███████████. Moreover, the absence of independence between the Mass. Appeals Court and the office of the Mass. Attorney General Maura Healey cannot be denied since the partner of the latter, Atty. Gabrielle Wolohojian, is a state appellate justice. Furthermore, years before having to file the four state appeals above-mentioned, Plaintiff solicited help from this Attorney General's Office no less than three times, to no avail. This validates the assertion that Plaintiff cannot expect fairness from the Mass. Appeals Court; especially now that the Attorney General is running for Governor. Nearly seven years ago sharp, assisting Plaintiff, who filed a non-self-serving complaint at the Attorney General's Office for the first time on February 24, 2015, did not retain Attorney General Maura Healey's consideration in contrast to legal fights where the latter had personal interests such as "mak[ing] her 'case to the U.S. Supreme Court [in April 2015] that same-sex couples have a constitutional right to marry everywhere in America!'"[15]

To the foregoing, Plaintiff must add that after having asked on February 11, 2022 to both Atty. Mark Johnson and Assistant Attorney General Tonie Ryan whether their respective clients would agree to "undertake any action of which they shall be aware to try to obtain the judge's rulings on their pending two motions[,]" Plaintiff was answered by Atty. Johnson on February 12, 2022 that "[t]he University defendants […] do not plan to take any [such] actions[.]" Plaintiff then

---

[15] *See* the press article "AG Maura Healey Wants Your Same-Sex Marriage Story" published online on February 19, 2015 in the Rainbow Times and accessible at: http://www.therainbowtimesmass.com/ag-maura-healey-wants-your-same-sex-marriage-story/.

replied this same day by asking Atty. Johnson: "Please would you mind confirming to me that your clients do not intend to change their position of not asking to be heard on any of their pending two motions?" Until the time when Plaintiff printed this letter on February 14, 2022, Atty. Johnson had still not answered this other question while Atty. Ryan had responded to the question emailed to her on February 11, 2022: "We cannot assent to any motion you intend to file for the Court to rule on the pending motion to dismiss as the Court has full discretion to act on it when it decides."

Hopefully, this letter will convey to this Court the extent to which Plaintiff's intense and earnest efforts to obtain some accountability from the Commonwealth have been useless, and that consequently fighting on her own in the appeals ▆▆▆▆ and ▆▆▆▆ is pointless. Had honesty and integrity been emulated by the Massachusetts legal system, Plaintiff would not have even needed to file these appeals in the first place. As of February 14, 2022, this Court is the sole entity with the power to avert the issuance of new wrongful decisions from the Mass. Appeals Court that will dog Plaintiff for the rest of her life as the untruthful ▆▆▆▆ decision of Appellate Justices ▆▆▆, ▆▆ and ▆▆ has already done. Plaintiff has indeed more to lose than she has already lost: besides being rendered unemployable via pure lies, Plaintiff now risks being disparaged into being a debtor. Plaintiff adamantly avers that she has evidence to make the case that she does not owe anything to DUA, quite the contrary. But this evidence has no worth in a state legal system designed to thwart and harm those who most need its help.

Wherefore, Plaintiff begs this Court to harness its power to provide her with assistance, in regard to the Mass. Appeals Court's impatience, in any fashion that it will deem justified by the circumstances exposed hereinabove.

Respectfully submitted,
/s/ Jane Doe

# ATTACHMENT #02

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### Civil Action No. 3:19-30056-MGM

**Jane Doe, an individual,**
**Plaintiff,**

**v.**

**UMass-Amherst, a public institution,**
**Dr. Derek Lovley, an individual,**
**Dr. Toshiyuki Ueki, an individual,**
**Dr. John Lopes, an individual,**
**Joy Ward, an individual,**
**Dr. Kumble Subbaswamy, an individual,**
**Sergeant Jonathan Hall, an individual,**
**Atty. Randall Smith, an individual,**
**Chief Scott Livingstone, an individual,**
**Karlee Drumgool, an individual,**
**Dr. Cynthia Gerstl-Pepin, an individual,**
**Sean Regan, an individual,**
**Chief Tyrone Parham, an individual,**
**Defendants.**

### Dated March 22, 2022

## UNASSENTED-TO EMERGENCY MOTION FOR A CLEAR ANSWER TO THE CRUCIAL QUESTION OF WHETHER THE COURT INTENDS TO RULE ON THE DEFENDANTS' FOUR PENDING MOTIONS

On February 14, 2022, Plaintiff informed this Court that she had been facing pressure from the state Appeals Court, which is like the first defendant listed in the above-captioned civil action one of the administrative agencies of the Commonwealth of Massachusetts (Attachment #01 in Dkt. No. 211). More precisely, Plaintiff explained that she was being pressed to undertake "steps [] to obtain [this Court's opinions on the defendants'] pending motions," which totaled the number of three at that time (Dkt. Nos. 101, 176, and 178), as the Mass. Appeals Court was leveraging the threat of lifting the stay it had granted on appeals originating from two decisions of another agency of the Commonwealth (i.e., the Department of Unemployment Assistance ("DUA").

Plaintiff complied with the Mass. Appeals Court's order and, although the actions that she put into motion—under the Mass. Appeals Court's pressure—did not elicit the result sought (i.e., the issuance by this Court of rulings on the defendants' pending motions), she showed that no indicia had transpired from this federal proceeding that could lead one to doubt that this Court is not intent on carrying its "'virtually unflagging obligation' to exercise [its] lawful jurisdiction and resolve the matter properly before [it]."[1] However, shockingly, once the Mass. Appeals Court was able to make that assessment for itself, it asked *only of* the DUA (which is one of its sister agencies) "whether the resolution of th[e present] matter would impact [Plaintiff's] appeal[s]." The DUA answered, *without evidentiary support*, that "it appears unlikely that the outcome of that case will have any impact on the current appeal[s]," *in spite of acknowledging* that it "is not fully aware of the issues in that case[.]" And subsequently, the Mass. Appeals Court ordered a lift of the stay by outright alleging that since the DUA "is not a party to the federal litigation, the plaintiff cannot demonstrate that the outcome of that proceeding is likely to impact th[ese] appeal[s]."

It does not suffice to say that the foregoing allegation is conclusory since it is squarely false. Indeed, besides depriving Plaintiff of an opportunity to "demonstrate that the outcome of that proceeding is likely to impact th[ese] appeal[s,]" the Mass. Appeals Court did not prove that the fact that the DUA "is not a party to the federal litigation," warrants the dispositive deduction that "the outcome of that proceeding" cannot "impact th[ese] appeal[s]."

In accordance with the Rooker-Feldman doctrine, it was not possible for Plaintiff to request that her complaints for judicial review of the DUA's wrongful decisions be performed by this Court despite the existence of both diversity and supplemental jurisdictions in the case at bar. As

---

[1] *See Ezike v. Bliss*, No. 1:16-cv-11832-DJC, at 1 (D. Mass. May. 5, 2017) (quoting *Nazario-Lugo v. Caribevisión Holdings, Inc.*, 670 F.3d 109, 114 (1st Cir. 2012) quoting in turn *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

a result, in no way could the DUA have been a defendant in the present litigation. Even so, since the aforementioned adverse decisions from which Plaintiff has been attempting to appeal directly or indirectly at the Mass. Appeals Court became issuable *solely because* one sister agency of the DUA—UMass-Amherst—retaliated against Plaintiff, these are both averred in Plaintiff's federal complaint (*see* ¶¶ 3f, 3g, and 156 in Third Amended Complaint ("TAC") at Dkt. Nos. 170 and 171) and claimed as concomitant repercussions endured owing to UMass-Amherst's persistence in engaging in unlawful retaliatory conduct toward Plaintiff (*see* ¶ 213 in TAC: "UMass-Amherst, on several occasions, took advantage of its power over Plaintiff's J-1 visa and work authorization to [] deny her right to receive unemployment insurance benefits from the Massachusetts Department of Unemployment Assistance[]" in support of Count V. Violation of 42 U.S.C. § 2000e-3(a) asserted against UMass-Amherst among other defendants). There is also, in Plaintiff's affidavit supporting her TAC (Exhibit #04), the mention of a retaliatory letter that one of UMass-Amherst's former General Counsel's representatives, Atty. Nathan LaVallee, wrote (and placed— unbeknownst to Plaintiff—in her employment records) to incite the DUA to endorse UMass-Amherst's retaliatory campaign against Plaintiff (*see* in particular ¶¶ 169 and 276, besides ¶¶ 209, 248, and 278, in Exhibit #04). Further, in regard to these collateral damages, Plaintiff requested injunctive relief (*see* subparagraph E of ¶ 262 in TAC).

At this juncture in this proceeding, absolutely nothing can allow the Mass. Appeals Court to either propound the unvalidated sequitur that because the DUA "is not a party to the federal litigation, the Plaintiff cannot demonstrate that the outcome of that proceeding is likely to impact th[ese] appeal[s,]" or contend that "the Plaintiff cannot demonstrate that the outcome of that proceeding is likely to impact th[ese] appeal[s]." The Mass. Appeals Court is now fully aware that Plaintiff's federal complaint is treated seriously and that the related docket entries do not presage

3

that the latter lacks merit and/or will not be adjudicated, notwithstanding the failure of Plaintiff's recent efforts to obtain this Court's opinions on the defendants' pending motions. Yet, instead of honoring its order pursuant to which the aforesaid appeals were stayed "until results of on-going federal litigation are issued," the Mass. Appeals Court changed course advancing an illogical and untrue reason. Over all, it flagrantly appears that the Mass. Appeals Court was only seeking to vacate this order and that it was ready to resort to any type of pretense to achieve this goal.

In consequence, Plaintiff is left with no choice but to appeal from what unarguably is a pretext. And in this context, Plaintiff, who is not trying to say to this Court what it should do, *implores* this Court to answer *with the utmost urgency* the question of whether it intends to rule on the defendants' four motions (Dkt. Nos. 101, 176, 178, and 208), which to date have been fully briefed, as the viability of Plaintiff's grounds to continue fighting for a stay initially allowed "until results of on-going federal litigation are issued" critically rely on the nature of this response.

Respectfully submitted,
/s/ Jane Doe

### Certificate of Local Rule 7.1(a)(2) Compliance

On March 22, 2022, Plaintiff hereby certifies that on March 17, 2022, she emailed via one common thread the defendants' counsels, i.e., Atty. Mark Johnson, Assistant Attorney General Tonie Ryan, and Atty. Deborah Ecker, to ascertain whether their respective clients, viz., the University Defendants, Defendant Atty. Randall Smith, and Defendant Chief Scott Livingstone, would assent to the allowance of the present motion. The following day (i.e., March 18, 2022), Atty. Johnson answered: "The University defendants do not assent to the proposed motion." And on March 22, 2022, AAG Ryan responded: "I am confirming that my client will not assent to the motion." Remarkably, Atty. Ecker did not address Plaintiff's March 17, 2022 email. Therefore, Plaintiff seeks the Court's assistance for a resolution.

Respectfully submitted,
/s/ Jane Doe

**Certificate of Service**

On March 22, 2022, Plaintiff hereby certifies that on this same day she handed out at the Clerk's office of the U.S. District Court for the District of Massachusetts located in Springfield, MA the instant motion and then emailed a copy of it to Atty. Mark Johnson (one of the University Defendants' counsels), AAG Tonie Ryan (Defendant Atty. Randall Smith's counsel), and Atty. Deborah Ecker (Defendant Chief Scott Livingstone's counsel).

Respectfully submitted,
/s/ Jane Doe

Jane Doe
813 North Pleasant St.
Amherst, MA 01003

**Retail**


UNITED STATES
POSTAL SERVICE

02210

RDC 99

John Joseph Moakley Courthouse
1 Courthouse Way
Boston, MA 02210